Filed 3/14/24  P. v. Franco CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOHN ROMERO,<br><br>    Defendant and Appellant. | B326109<br><br>(Los Angeles County Super. Ct. No. PA040557) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RANDY FRANCO,<br><br>    Defendant and Appellant. | B316835<br><br>(Los Angeles County Super. Ct. No. PA040557) |

APPEALS from postjudgment orders of the Superior Court of Los Angeles County, George G. Lomeli, Judge. Reversed and remanded with directions.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant John Romero.

Nancy J. King, under appointment by the Court of Appeal for Defendant and Appellant Randy Franco.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael C. Keller and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

A jury convicted John Romero and Randy Franco in 2003 of first degree murder with a special-circumstance finding (lying in wait) and conspiracy to commit murder. Romero and Franco appeal the postjudgment orders denying their petitions for resentencing pursuant to Penal Code section 1170.95 (now section 1172.6).[1] However, contrary to the superior court's findings, because of instructional errors relating to the special circumstance of lying in wait and the conspiracy charge, the jury's findings do not preclude relief as a matter of law. Determining whether those errors were harmless requires factfinding not permitted under section 1172.6 at the prima facie review stage. We reverse the orders denying Romero's and

---

[1] Effective June 30, 2022, Penal Code section 1170.95 was renumbered as section 1172.6 with no change in the text. (Stats. 2022, ch. 58, § 10.) Further statutory references are to the Penal Code.

Franco's petitions and remand with directions for the court to issue orders to show cause and conduct further proceedings in accordance with section 1172.6, subdivision (d).

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Killing, Jury Instructions, Convictions, and Appeals*

Following the murder of Victor Flores, a Brown Familia criminal street gang member, Romero, Franco, and other members of the same gang gathered in an apartment to discuss Flores's death.[2]  They suspected Byron Benito, a member of the rival gang, played a role in Flores's death.  The group devised a plot to use an individual who was not a member of their gang to lure Benito into an ambush.  The attack went according to plan. Benito arrived at a parking lot in a car with the decoy where Benito was assaulted by waiting gang members.  After initially resisting, Benito attempted to flee, but someone tripped him.  As Benito lay on the ground, the group stabbed, beat, and kicked him for 10 to 15 minutes before leaving the area and returning to the apartment where they had met earlier.  Early the next morning police recovered Benito's body.

An amended information filed July 7, 2003 charged Romero, Franco, and 14 others with first degree murder (§ 187, subd. (a)) and conspiracy to commit murder (§ 182, subd. (a)(1)), with a special-circumstance allegation the murder was committed

---

[2]   We include a summary of the facts taken from Romero's and Franco's direct appeal for background purposes.  (*People v. Romero* (Oct. 3, 2006, B170885) [nonpub. opn.].)  We do not rely on the facts in resolving the issues presented in this appeal.  We consider Romero's and Franco's appeals together.

3

by lying in wait (§ 190.2, subd. (a)(15)) and a further allegation both offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

Romero and Franco were tried together with three codefendants. The trial court instructed the jury on the natural and probable consequences doctrine with CALJIC No. 3.02 (7th ed. 2003):[3] "One who aids and abets another in the commission of a crime or crimes is not only guilty of those crimes, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crimes originally aided and abetted. In order to find a defendant guilty of the crime of murder, as charged in Count 1, you must be satisfied beyond a reasonable doubt that: 1. The crime or crimes of assault, assault with a deadly weapon or by means of force likely to produce great bodily injury, or conspiracy to commit assault or assault with a deadly weapon or by means of force likely to produce great bodily injury were committed; 2. That the defendant aided and abetted those crimes; 3. That a co-principal in that crime committed the crime of murder; and 4. The crime of murder was a natural and probable consequence of the commission of the crimes of assault, assault with a deadly weapon or by means of force likely to produce great bodily injury, or conspiracy to commit assault or assault with a deadly weapon or by means of force likely to produce great bodily injury."

With respect to the lying-in-wait special circumstance, the trial court instructed the jury with the first three paragraphs of CALJIC No. 8.80.1 on aider and abettor liability: "If you find a

---

[3]     All references to the CALJIC instructions are to the 2003 edition.

4

defendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance is true or not true:  The defendant intentionally killed the victim by means of lying in wait in violation of Penal Code section 190.2(a)(15).  The People have the burden of proving the truth of the special circumstance.  If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true.  You must decide separately as to each of the defendants the existence or nonexistence of the special circumstance alleged in this case.  If you cannot agree as to all the defendants, but can agree as to one or more of them, you make your finding as to the one or more upon which you do agree."  The court further instructed the jury with CALJIC No. 8.81.15.1:  "To find the special circumstance referred to in these instructions as murder by means of lying in wait is true, each of the following facts must be proved  1.  The defendant intentionally killed the victim, and 2.  The murder was committed by means of lying in wait."

As to the conspiracy charge, the trial court instructed the jury with CALJIC No. 8.69:  "In order to prove this crime, each of the following elements must be proved: 1.  Two or more persons entered into an agreement to kill unlawfully another human being; 2.  At least two of the persons specifically intended to enter into an agreement with one or more other persons for that purpose; 3.  At least two of the persons to the agreement harbored express malice aforethought, namely a specific intent to kill unlawfully another human being; and 4.  An overt act was committed in this state by one or more of the persons who agreed and intended to commit murder."  The court also instructed pursuant to CALJIC No. 6.11:  "Each member of a criminal

conspiracy is liable for each act and is bound by each declaration of every other member of the conspiracy if that act or declaration is in furtherance of the object of the conspiracy. . . .  A member of a conspiracy is not only guilty of the particular crime that to his or her knowledge his or her confederates agreed to and did commit, but is also liable for the natural and probable consequences of any crime or act of a co-conspirator to further the object of the conspiracy, even though that crime or act was not intended as a part of the agreed upon objective . . . .  You must determine whether the defendant is guilty as a member of a conspiracy to commit the originally agreed upon crime or crimes, and, if so, whether the crime alleged in Count 1 was perpetrated by a co-conspirator in furtherance of that conspiracy and was a natural and probable consequence of the agreed upon criminal objective of that conspiracy."

The jury found Romero, Franco, and their codefendants guilty of both charges with true findings on the special circumstance and gang allegations.  The trial court sentenced both Romero and Franco for first degree murder to life without the possibility of parole.  On the conspiracy count, the court imposed and stayed sentences of 25 years to life.

We affirmed the judgments against Romero and Franco. (*People v. Romero* (Oct. 3, 2006, B170885) [nonpub. opn.].) Among the arguments advanced by the codefendants, in which Romero and Franco joined, was that CALJIC No. 8.69 as given permitted the jury to find the defendants guilty of conspiracy to commit murder without finding that each of them (as opposed to at least two of the multiple coconspirators) had the specific intent to kill.  We agreed the language of the instruction at issue—that "[a]t least two of the persons to the agreement harbored express

6

malice aforethought, namely a specific intent to kill unlawfully another human being"—was intended to be used only in cases where there was a feigned accomplice, and the instruction did not "clearly or completely describe the specific intent element for conspiracy to commit murder in this case." Nonetheless, reviewing the erroneous language in the context of the entire instruction, the other instructions given, and the record, we concluded there was not a reasonable likelihood the jury misunderstood the requirement that, to convict a particular defendant of conspiracy to commit murder, the jurors had to find the defendant harbored both the specific intent to agree and the specific intent to kill.

B.    *Franco's Petition for Resentencing*

On March 22, 2019 Franco filed a petition for resentencing pursuant to former section 1170.95. On May 7, 2019 the superior court summarily denied the petition without appointing counsel based on "the overall trial evidence as well as Court of Appeal decision," which showed Franco possessed an intent to kill and was a major participant who acted with reckless indifference to human life. The court also held former section 1170.95 was unconstitutional.

On October 27, 2020 Franco filed a second petition for resentencing. After appointing counsel and receiving the People's response and Franco's reply, the superior court issued an oral tentative ruling denying the petition. The court found Franco was ineligible for relief as a matter of law because the jury had been instructed with CALJIC No. 8.81.15.1 and, by "finding true the special circumstance of lying in wait pursuant to Penal Code Section 190.2(a)(15), by implication . . . made a determination

7

that the petitioner had an intent to kill." Further, the jury convicted Franco of conspiracy to commit murder, and the murder charge and the conspiracy charge involved the same victim, meaning the jury had "to find that [Franco] had possessed in him an intent to kill." Following the oral tentative ruling, Franco filed a supplemental brief requesting an order to show cause. After considering Franco's supplemental brief, on November 1, 2021 the court adopted its tentative ruling and denied the petition. Franco timely appealed.

C.    *Romero's Petition for Resentencing*

On May 16, 2022 Romero filed a form petition for resentencing pursuant to former section 1170.95. After appointing counsel and receiving the People's response to the petition, the superior court provided an oral tentative ruling to deny the petition. The court found Romero was ineligible for relief as a matter of law because the jury convicted him of "first degree premeditated murder and conspiracy to commit murder," which involved the same victim, and the jurors found the special circumstance of lying in wait to be true, which "require[d] that they make a finding that the defendant intentionally killed the victim; and, two, that the murder was committed by means of lying in wait, and certainly therefore, by implication, the jury had to necessarily find that the petitioner possessed the specific and express intent to kill." On September 21, 2022 the court adopted its tentative ruling and denied the petition. Romero timely appealed.

8

## DISCUSSION

A. *Senate Bill No. 1437 and Section 1172.6*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848; see *People v. Reyes* (2023) 14 Cal.5th 981, 984.) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule as set forth in section 189, subdivision (e). (*Reyes*, at p. 986; *Gentile*, at pp. 842-843.)

If the section 1172.6 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the sentencing court must appoint counsel to represent the petitioner upon request. (§ 1172.6, subd. (b)(3).) Further, upon the filing of a facially sufficient petition, the court must determine whether the petitioner has made a prima facie showing of entitlement to relief. (See § 1172.6, subd. (c).) In doing so, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*People v. Lewis, supra*, 11 Cal.5th at p. 971.) However, "the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, "'the court takes petitioner's factual allegations as true and makes a

9

preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved'" . . . . 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Ibid*.)

When a petitioner has carried the burden of making a prima facie showing, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c), (d)(1).)

B.      *The Superior Court Erred in Finding Romero and Franco Were Ineligible for Resentencing as a Matter of Law*

Romero and Franco contend their records of conviction, including the jury's findings, do not preclude relief as a matter of law because of the flawed jury instructions associated with the lying-in-wait special circumstance and conspiracy charge. We agree.[4]

1.      *Lying-in-wait special-circumstance instruction*

It is undisputed the trial court instructed the jury on the natural and probable consequences doctrine (CALJIC No. 3.02) that Romero and Franco could be convicted of Benito's murder if

---

[4]      For the same reasons articulated in this opinion, we reversed a postjudgment order summarily denying a section 1170.95 petition filed by codefendant Alfredo Hernandez. (*People v. Hernandez* (Oct. 18, 2022, B313884) [nonpub. opn.].) Romero's request for judicial notice of our opinion in *People v. Hernandez* is denied as unnecessary.

they assisted in the assault on Benito or conspired with their confederates to commit the assault, and Benito's murder by one of their confederates was a natural and probable consequence of Romero's and Franco's participation in that crime.  This instruction on the natural and probable consequences doctrine, if given alone, would have entitled Romero and Franco to an order to show cause under section 1172.6 because an evidentiary hearing would be necessary to determine whether Romero and Franco acted with malice aforethought (rather than imputed malice) based solely on their participation in the aggravated assault on Benito.  (§ 188, subd. (a)(3).)

The superior court relied on the jury's true finding on the lying-in-wait special circumstance allegation to support its conclusion that Romero and Franco were not eligible for resentencing.  Section 190.2, subdivision (a)(15), defines lying in wait as a special circumstance when "[t]he defendant intentionally killed the victim by means of lying in wait."  Section 190.2, subdivision (c), further provides that a special-circumstance finding may only be found true with respect to a person who was not the actual killer (other than the felony-murder special circumstance) where the person "with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree."  CALJIC No. 8.80.1 and CALJIC No. 8.81.15.1 set forth the elements for a special-circumstance finding for an aider and abettor and the elements for a lying-in-wait special-circumstance, respectively, including the requirement of intent to kill.  Thus, where the jury is properly instructed with CALJIC Nos. 8.80.1 and 8.81.15.1, a true finding on the lying-in-wait special circumstance allegation under section 190.2,

11

subdivisions (a)(15) and (c), means the defendant necessarily acted with express malice.

Here, however, the trial court did not properly instruct the jury because the special circumstance instructions omitted the essential element of intent to kill for an aider and abettor. Specifically, the court omitted the fourth paragraph of CALJIC No. 8.80.1, which states: "If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor or co-conspirator, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested or assisted any actor in the commission of the murder in the first degree."

The superior court, in denying Romero's and Franco's petitions based on the jury's lying-in-wait special-circumstance finding found that the true finding required the jury to conclude that the murder was committed by means of lying in wait, and "by implication," the jury had to determine that Romero and Franco possessed an intent to kill. While it may be that the jury reached that decision, the inference cannot be confirmed absent an evidentiary hearing. The jury could have found Romero and Franco guilty of first degree murder as the natural and probable consequence of aiding and abetting the aggravated assault on Benito. The jury was also instructed that an aider and abettor is a principal in that crime and, regardless of the extent of participation, is equally guilty as a direct perpetrator (CALJIC No. 3.02). Thus, without the omitted language from CALJIC No. 8.80.1 regarding an aider and abettor's intent to kill, the jury

12

could have found true the special-circumstance allegation as to Romero and Franco on the mistaken belief that, as aiders and abettors of aggravated assault, they were equally guilty as the direct perpetrator who had committed first degree lying-in-wait murder. The jury's special-circumstance finding does not, therefore, defeat Romero's and Franco's prima facie showing of eligibility for resentencing.

Contrary to the Attorney General's position, the trial court's lying-in-wait instruction pursuant to CALJIC No. 8.81.15.1 did not cure the defective instruction pursuant to CALJIC No. 8.80.1. As given at trial, CALJIC No. 8.81.15.1 stated that to find the lying-in-wait allegation true, the jury had to find "[t]he defendant intentionally killed the victim," which is the same language in section 190.2, subdivision (a)(15). This language does not specify whether it is referring to the direct perpetrator or the aider and abettor, and therefore, without the additional language in the fourth paragraph of CALJIC No. 8.80.1, the jury could have found Romero and Franco guilty as aiders and abettors of murder based on the direct perpetrator's intent to kill.

2.     *Jury instruction for conspiracy to commit murder*

The Attorney General does not address Romero and Franco's argument that because the conspiracy instruction (CALJIC No. 8.69) was likewise flawed, their convictions for conspiracy do not make them ineligible for resentencing as a matter of law. (See *People v. Bouzas* (1991) 53 Cal.3d 467, 480 [respondent's failure to respond to appellant's argument may be considered a concession].) Regardless of whether the Attorney

13

General's failure to address this argument is a concession, Romero and Franco are again correct.

As explained in our opinion affirming the convictions of Romero, Franco, and their codefendants on direct appeal, the reference in CALJIC No. 8.69 to "at least two of the persons" rather than "each of the persons," in defining the conspiracy's necessary specific intent elements, was error.[5] More than a decade after our decision, in *People v. Garton* (2018) 4 Cal.5th 485, 516 (*Garton*), the Supreme Court explained that "[a]sking the jury to find specific intent for 'at least two' conspirators in a conspiracy with more than two members, none of whom is feigning involvement, could potentially lead a jury to find an individual conspirator guilty without finding that he or she possessed a specific intent to agree or to kill." In contrast to our analysis in the direct appeal—in which we evaluated whether there was a reasonable likelihood under *People v. Watson* (1956) 46 Cal.2d 818 that the jury misunderstood the instruction—the court in *Garton* held the error harmless under any standard (*Watson* or *Chapman v. California* (1967) 386 U.S. 18) because the jury had been properly instructed pursuant to CALJIC No. 8.80.1 that if the defendant "'was not the actual killer of a

---

[5]     The Use Notes to CALJIC No. 8.69, at page 388, explain, "The alternative bracketed wording has been provided in elements 2, 3 and 4 to accommodate the situation where there is a feigned accomplice. 'The "feigned participation of a false coconspirator or government agent in a conspiracy of more than two people does not negate criminal liability for conspiracy, as long as there are at least two other coconspirators who actually agree to the commission of the subject crime, specifically intend that the crime be committed, and themselves commit at least one overt act.'""

human being, . . . you cannot find the special circumstance to be true . . . unless you are satisfied beyond a reasonable doubt that [the defendant], with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree.'" (*Garton*, at p. 517.) On this basis, the *Garton* court concluded that "in finding the special circumstances true, the jury necessarily found that Garton possessed a specific intent to kill Carole and her fetus."[6] (*Ibid.*)

As discussed, the language the *Garton* court relied on from the fourth paragraph of CALJIC No. 8.80.1 was the key language the trial court omitted from the instruction given at Romero's and Franco's trial. Absent that language, Romero's and Franco's convictions for conspiracy to commit murder do not establish they are ineligible for resentencing as a matter of law.

---

[6] The special circumstances alleged and found true in *Garton, supra,* 4 Cal.5th at page 485 were that the defendant committed multiple murders, he committed the murders for financial gain, and a principal in each offense was armed with a firearm.

15

## DISPOSITION

The postjudgment orders denying Romero's and Franco's petitions for resentencing are reversed.  On remand the superior court is to issue orders to show cause and to conduct further proceedings in accordance with section 1172.6, subdivision (d).

FEUER, J.

We concur:

SEGAL, Acting P. J.

MARTINEZ, J.